

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

---

No. 02-22-00237-CR

---

JOSPEH[1] WILLIAM WHITESIDE, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 1
Tarrant County, Texas
Trial Court No. 1469885D

---

Before Sudderth, C.J.; Bassel and Walker, JJ.
Memorandum Opinion by Justice Bassel

---

[1]Although we use Appellant's name as set forth in the judgment, as explained in the opinion, the correct spelling of Appellant's first name is Joseph.

## MEMORANDUM OPINION

Appellant Jospeh William Whiteside raises one issue on appeal contending that the trial court abused its discretion by rendering judgment revoking his community supervision. Specifically, Appellant contends that the State failed to prove by a preponderance of the evidence that he had violated the terms of his community supervision. The record contains sufficient evidence to establish that Appellant had violated at least one of the conditions that the State had alleged. Thus, we affirm the trial court's judgment.

Appellant pleaded guilty to the offense of burglary of a habitation and was placed on deferred-adjudication community supervision for four years. The State later filed a petition to proceed to adjudication, to which Appellant entered a plea of true, and he was adjudicated guilty and sentenced to three years' confinement. Appellant then filed a motion for shock probation. The trial court granted the motion and rendered a judgment of conviction that suspended the sentence of confinement and placed Appellant on community supervision for three years. One condition of Appellant's community supervision was that he "abstain from . . . consumption of any alcoholic beverage."

The State subsequently filed a petition to revoke community supervision and later a first amended petition. The amended petition alleged that Appellant had violated the terms and conditions of his community supervision in the following ways:

1. [Appellant] committed the offense of Driving While Intoxicated 2nd on or about the 18th day of November 2020 in the County of Dallas and the State of Texas.

2. [Appellant] consumed alcohol on or about November 18, 2020.

3. [Appellant] committed the offense of DWI-MISD REPETITION on or about the 13th day of November 2021 in the County of Tarrant and the State of Texas.

4. [Appellant] failed to submit to a breath test on or about November 13, 2021, as instructed by a peace officer or supervision officer.

5. [Appellant] failed to submit a blood sample on or about November 13, 2021, as instructed by a peace officer or supervision officer.

6. [Appellant] consumed alcohol on or about November 13, 2021.

The trial court conducted a contested revocation hearing at which Appellant entered a plea of not true to the allegations in the State's amended petition. After hearing the evidence presented by the State and Appellant, the trial court found that Appellant had violated the terms and conditions of his probation, revoked his community supervision, sentenced him to three years' confinement, and rendered judgment accordingly. Appellant then filed a notice of appeal.

In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision. *Bryant v. State*, 391 S.W.3d 86, 93 (Tex. Crim. App. 2012); *Rickels v. State*, 202 S.W.3d 759, 763–64 (Tex. Crim. App. 2006). The trial court is the

sole judge of the witnesses' credibility and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

A preponderance of the evidence is met if the greater weight of the credible evidence creates a reasonable belief that the defendant has violated a condition of probation. *Hacker*, 389 S.W.3d at 865. The preponderance of the evidence standard "has been described as a review for whether there is 'more than a scintilla' of evidence." *Holcomb v. State*, No. 14-21-00718-CR, 2023 WL 415862, at *1 (Tex. App.—Houston [14th Dist.] Jan. 26, 2023, no pet.) (mem. op., not designated for publication) (quoting *Hacker*, 389 S.W.3d at 865). If the State fails to meet its burden of proof, the trial court abuses its discretion by revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94.

As we must affirm the trial court's judgment if there is proof of one of the alleged violations, we will focus on the proof establishing that Appellant had consumed alcohol on or about November 13, 2021. *See generally Goode v. State*, 685 S.W.2d 789, 790 (Tex. App.—Fort Worth Mar. 7, 1985, no pet.) ("It is well-settled that sufficient proof of any one of the alleged violations of the condition[s] of probation will support the court's order to revoke probation."). The State proved that violation through the testimony of the arresting officer, an officer's body-camera

4

video, and the testimony of a forensic scientist employed by the Texas Department of Public Safety in the alcohol volatile section of the department's Garland Crime Lab.

The arresting officer testified that, at the time of the incident, he was the DWI officer for the Grapevine Police Department and that his job duties included "look[ing] for intoxicated drivers on the roadway, respond[ing] to crashes, and respond[ing] to called-in possible intoxicated drivers as well." On November 13, 2021, the officer was called to a scene where he made contact with an individual whom he identified as Appellant. Appellant's vehicle had run out of gas, but he admitted that he had been "driving the vehicle."

The State's evidence included an officer's body-camera video, which showed Appellant speaking with the officer. When the officer asked Appellant where he was coming from, Appellant responded, "Temptations," which he agreed was a bar. The officer asked Appellant how much he had to drink, and he said, "[N]ot too much." The officer told Appellant that he was over twenty-one and was allowed to drink. When the officer told Appellant that he could smell "it" after the inquiry about drinking, Appellant admitted that he had consumed three or four shots of tequila.

The officer testified that he then administered standardized field-sobriety tests to Appellant. Appellant demonstrated various clues of intoxication. The officer also testified, "Just while talking to him, I could smell the strong odor of an alcoholic beverage coming off his breath, speech was slurred at times, movements lethargic." According to the officer, Appellant refused to provide a breath sample, and the

officer obtained a search warrant to conduct a blood draw. Appellant was taken to Baylor Hospital in Grapevine where his blood was drawn by a nurse. The officer identified State's Exhibit 4 as Appellant's blood-draw kit that was sent to the lab.

The forensic scientist testified that she had tested the sample of Appellant's blood and had created a report of her analysis. The scientist's analysis showed that Appellant had a "blood[-]alcohol concentration [of] 0.141 grams of alcohol per 100 milliliters of blood."

On appeal, Appellant makes a number of tenuous challenges to the evidence that showed that he had consumed alcohol:

- With respect to the officer's testimony that Appellant had demonstrated clues of intoxication and had exhibited various physical signs of having consumed alcohol, Appellant remarks that "[t]here could be other reasonable explanations for not passing [the sobriety tests] like previous injuries or overall tiredness." Even if these hypotheticals undermine the officer's opinion about Appellant's failure to pass the sobriety tests, they do not explain the odor of alcohol on his breath.

- With respect to his recorded discussion with the officer, Appellant posits:

  > The State also presented State's Exhibit 1, which was the video of that encounter with . . . Appellant. On the video Appellant did say "we" were coming from [T]emptations and he had three shots of tequila - but again - he did not say that it was alcoholic tequila. It could have been nonalcoholic tequila. There was no testimony or evidence that the tequila contained

alcohol, although there was a conversation directly after this response that is not discernable on the video due to traffic noise. [Record references omitted.]

Appellant's argument isolates the statements from the context in which they were made. Appellant ignores that the officer had asked him how much he had to drink; that Appellant had initially responded, "[N]ot too much"; and that after the officer stated to Appellant that he was twenty-one and could drink, Appellant said that he had consumed three or four shots of tequila. Even if such a thing as nonalcoholic tequila exists, the context of the conversation and Appellant's responses demonstrate that the conversation involved Appellant's consumption of alcohol.

- Finally, Appellant offers the following challenge to the proof of his blood-alcohol concentration contained in State's Exhibit 5, the report prepared by the forensic scientist:

> As can be seen in the above testimony, [the forensic scientist] was clearly confused. She gave case number GAR-**2111**-17702 but then said the laboratory case number on the report was a different case GAR-**211**-17702. She also stated that the toxicology report was for *Joseph* William Whiteside[,] but Appellant's name is *Jospeh* William Whiteside in the indictment. The two exhibits did not match up. This infers an improper chain of custody. Was the expert testifying to the results from Appellant's case or another? Here, because the expert misidentified the number on the exhibit, and possibly the name on the reports, the provenance of State[']s Exhibits 4 and 5 are called into question. [Record reference omitted.]

With respect to the case number on the report, in response to one question before the one that Appellant challenges, the scientist had testified, "I recognize [State's Exhibit 5] as the Texas Department of Public Safety alcohol volatile report with the laboratory Case No. GAR-2111-17702." When asked to link the sample of Appellant's blood identified by the officer to the report, the scientist stated, "I link both of these by the laboratory case number that is on this evidence with GAR-211-17702 (sic) and my date and initials on the label." It is apparent that the scientist just omitted a number in the identifier when she recited it the second time and was not talking about a different case, was confused, or was testifying in a way that "called into question" the chain of custody.

As to Appellant's name, the State's brief included the following footnote:

> Though much of the paperwork (including the indictment and judgment) submitted in this case has Appellant's given name spelled "J-O-S-P-E-H," the reporter[']s record, wherein Appellant states that his "true and correct name is Joseph Whiteside," makes clear that this is a clerical error and that Appellant's name is "Joseph Whiteside."

Further, a host of documents in the clerk's record that were prepared by Appellant's counsel spell his name as Joseph; this includes his notice of appeal. Further, at no point did Appellant suggest to the trial court that

8

someone else's blood was tested. A reasonable inference from the record is that the spelling is a typo.

The officer's and the scientist's testimony are more than a scintilla of evidence that Appellant violated the terms of his community supervision by consuming alcohol on or about November 13, 2021. Proof of this violation supports one of the violations alleged by the State, and the trial court thus did not abuse its discretion by revoking Appellant's community supervision.[2]

Accordingly, we overrule Appellant's sole issue, and we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: April 27, 2023

---

[2]Because proof by a preponderance of the evidence of any of the alleged violations of the conditions of community supervision is sufficient to support a revocation order, *see Smith v. State*, 286 S.W.3d 333, 342 & n.36 (Tex. Crim. App. 2009), we need not address Appellant's remaining arguments challenging the evidence to support the trial court's findings that the allegations in the remaining paragraphs of the State's amended petition to revoke were true. *See* Tex. R. App. P. 47.1 (requiring appellate court to address only issues necessary for disposition of appeal).